Hat, Judge,
delivered the opinion of the court:
On the 21st day of March, 1893, the firm of J. B. & W. L. Killebrew, of which W. L. Killebrew is the surviving partner, entered into a contract with the United States, by which they agreed to deliver to the defendants about 300,000 cubic yards of stone for use in public improvements on the Mis-sisippi River, third district. The delivery of the stone was to commence on April 1, 1893, and was to have been completed on June 30, 1896. The advertisement and specifications attached to the contract were made a part of the contract.
Among other things the contract and specifications contained the following provisions, which are material to the determination of this suit:
“ The decision of the engineer officer in charge as to quality and quantity shall be final.”
“ The party of the second part shall Be responsible for and pay all liabilities incurred in the prosecution of the work for labor and material.”
“ It is understood and agreed that the quantitites given are approximate only, and it must be understood that no claim shall be made against the United States, on account of any excess or deficiency, absolute or relative, in the same.”
“ The stone will be delivered under the following provisions of the river and harbor act of July 13, 1892: That on and after the passage of this act additional contracts may be entered into by the Secretary of War for such materials and work as may be necessary to carry on continuously the plan of the Mississippi River Commission as aforesaid, or said materials may be purchased and work may be done other *445 wise than by contract, to be paid for as appropriations may from time to time be made by law, not exceeding in the aggregate two million six hundred and sixty-five thousand dollars per annum for three years, commencing July first, eighteen hundred and ninety-three. There is now available for the purpose from existing appropriations and allotments, about $60,000.”
“ During high water the stone and spawls will be received on Government barges at any point accessible to the towboats of the third district on the Yfhite Biver and its tributaries and on the Mississippi Biver between Memphis and Greenville, and bidders will specify the place at which delivery is to be made.”
“ Delivery will begin ten days from the date of notice from the engineer in charge to commence loading stone. Notice to commence delivery will not be given until funds have been duly appropriated and allotted for the purpose, and if for any cause the funds should not be available for the purchase of stone, notice will be given the contractor to stop work for that season, and no stone will be received ten days after such notice is given.”
“The contractor will be responsible for the proper care of barges while in his possession, and they will be loaded in such a manner and to such depths as may be directed by the engineer in charge or his authorized agent.”
The contractors under their contract delivered 187,767.1 cubic yards of stone, as ascertained by the measurement of Government inspectors, and were paid for that number of cubic yards.
The plaintiff is now bringing this suit to recover from the United States damages which he alleges the contractors suffered by reason of the failure of the Government to receive the full amount of stone mentioned in the contract; also the cost of work done by the contractors in loading barges in accordance with the requirements of the Government, and for the value of stone delivered by the contractors and not paid for, the Government, as they contend, failing to measure and receipt for all the stone loaded on the barges.
As to the first claim, that the Government was obliged to receive and pay for the full amount of stone mentioned in the contract, we do not think that the contract binds the Government to receive the full amount of stone mentioned therein. The principle laid down in Brawley v. United *446 States, 168 U. S., 172, governs this ease. In that case the meaning of the words “ about ” and “ more or less ” is discussed, and it is there stated:
“ If, however, the qualifying words are supplemented by other stipulations or conditions which give them a broader scope or a more extensive significancy, then the contract is to be governed by such added stipulations or conditions.”
In this case the added stipulations and conditions are obvious and must control the contract. They are as follows :
“It is understood and agreed that the quantities given are approximate only, and it must be understood that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same.”
“ The decision of the engineer officer in charge as to quality and quantity shall be final.”
In addition to these stipulations was one which made the contract depend upon appropriations and allotments of appropriations for this particular work, and another which made deliveries dependent upon the state of the water in the White River and its tributaries. These stipulations are determinative of the contract. Whatever was done by the contractors after the contract was made must have been done with the full knowledge by them that the whole amount of stone might not be called for, and, if it was not called for, that they could have no claim against the United States for their failure to receive the full amount designated in the contract.
The claim for cost of building stone walls on the barges when they were being loaded can not be allowed in the face of the stipulation that “ the contractor will be responsible for the proper care of barges while in his possession, and they will be loaded in such a manner and to such depths as may be directed by the engineer in charge or his authorized agent.” The barges were loaded in the manner customary in that vicinity, and of this custom the contractors had notice.
The only other claim is for a quantity of stone which it is alleged the contractors delivered and were never paid for. We think this claim is valid. It appears from the evidence that the Government inspectors in measuring the stone *447 loaded on the barges failed to measure and allow for tlie extra quantity of loose stone so used to build the stone walls on the barges. The contract does not provide for the method of measuring this stone. It is difficult to understand why the stone loaded on the barges and used for the building of the walls should not be measured and paid for. It was delivered to the Government at the same time that the loose stone was delivered, and should have been measured and paid for.
It follows from the foregoing that the plaintiff should have judgment for $6,076.56, and it is so ordered.
Downey, Judge, Baeney, Judge, and Campbell, Chief Justice, concur.
Booth, Judge, took no part in the decision of this case.